FILED

2005 May-02  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| REGINA R. TAYLOR, et al., | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | CV-03-CO-02241-W |
| | ] | |
| MERCEDES-BENZ U.S. | ] | |
| INTERNATIONAL, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration defendant Mercedes-Benz U.S. International, Inc.'s ("MBUSI") motion for summary judgment, which was filed on February 28, 2005.  (Doc. 25.)  Plaintiffs Regina Taylor and William Taylor have sued MBUSI for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, invasion of privacy, negligent and reckless/wanton failure to train and supervise, and loss of consortium.  (Doc. 1.)  Defendant has moved for summary judgment on all of Plaintiffs' claims and has asked that this case be dismissed in its entirety for bad faith spoilation of evidence.  (Doc. 25.)  The issues raised in Defendant's motion

for summary judgment have been briefed by both parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion will be granted with regard to plaintiff William Taylor's claim for loss of consortium, but denied in all other respects.[1]

II.    Facts.[2]

Plaintiff Regina Taylor started working for MBUSI as a production team member in the "Body Shop" on March 3, 1997.  After approximately two years in the Body Shop, and following an investigation into allegations of sexual harassment that are not the basis for this lawsuit, Plaintiff was transferred on October 18, 1999, to the "Assembly Shop."  In the Assembly

---

[1]Plaintiff Regina Taylor's claim for retaliation under Title VII is no longer before this Court.  In Plaintiff's response to summary judgment, Mrs. Taylor stated that she voluntarily dismissed her claims for retaliation based on lowered performance evaluations and the denial of bids for other positions in the plant. (Doc. 30 at 52.)  The Court treated this statement as a motion to dismiss, and these claims were dismissed with prejudice on April 19, 2005. (Doc. 37.)  Plaintiff's motion to amend her complaint to add a claim for retaliatory discharge was denied on April 6, 2005.  (Doc. 36.)

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Shop, Mrs. Taylor started on the "Option Cladding Line."  Plaintiff became the only woman in the group when co-worker Annette Humphries transferred positions in 2001.

Mrs. Taylor complains that, beginning in 2001, fellow employees threatened her, called her vulgar names related to her weight, and made comments and gestures in her presence of a sexual nature.  Mrs. Taylor specifically alleges that Fred Rogers, her team leader,[3] sexually harassed her on a number of occasions by massaging her shoulders, talking about the length of a part of his anatomy, staring at her, telling jokes about having sex with other women, reminding her a hotel was down the street, telling her that she would leave her husband after five minutes of sex with him, and leaning in close to talk or walking right behind her.  Plaintiff also says that Fred Rogers and Steve Nord, another group leader, treated her differently from the men in her group by moving her to areas to which she was not assigned and/or trained more than they did men, acting in an intimidating

---

[3]A team leader is not a management employee, cannot hire or fire, and cannot issue discipline.  A team leader, however, may be in charge of moving workers in an area to ensure that work needs are met.

manner, and yelling at her to finish jobs more quickly than the men.  MBUSI disputes Plaintiff's accusations.

On August 26, 2002, Plaintiff filed an EEOC charge for discrimination based on her sex.  The EEOC issued its dismissal and notice of rights on May 9, 2003.  Mrs. Taylor and her husband then filed a complaint in this Court on August 8, 2003, for hostile environment discrimination and retaliation under Title VII, invasion of privacy, negligent and wanton/reckless failure to train and supervise, and loss of consortium.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

A.   Bad Faith Spoilation of Evidence.

Defendant argues first that Plaintiffs' case should be dismissed in its

entirety because Mrs. Taylor "intentionally destroyed recorded conversations with MBUSI employees and other relevant documents during the pendancy of her claim." (Doc. 26 at 37.)  To the extent that bad faith spoilation is an issue in this case, it will be addressed at trial.  Therefore, Defendant's request is denied at this time.

B.     Hostile Environment Under Title VII.

Defendant has moved for summary judgment on plaintiff Regina Taylor's hostile environment claim under Title VII.  MBUSI asserts that: (1) her claim is untimely, (2) any alleged harassment was not based on Mrs. Taylor's sex, and (3) MBUSI is not liable for any harassing conduct because it always took prompt remedial action.  (Docs. 25, 26.)

1.     Timeliness of the Hostile Environment Harassment Claim.

Both parties agree that for a hostile environment claim to be timely, at least one of the alleged harassing acts must fall within the 180-day time period prior to filing one's charge of discrimination with the EEOC.[4]  *Nat'l*

---

[4] In  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the U.S. Supreme Court wrote:

> "A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003).  (Docs. 26 at 42; 30 at 38; 34 at 40.)  Defendant argues that the harassment alleged by the plaintiff in this case occurred well before the requisite 180-day time period, but cited to only one page of Mrs. Taylor's lengthy deposition as support for its claim. (Doc. 26 at 42.)  Defendant acknowledged later that Plaintiff submitted written complaints to her employer within the statutory time period, but argued that these complaints are not proof that any alleged harassing acts actually occurred within that time period.  (Doc. 34 at 40.)

This Court must view the evidence at summary judgment in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  In at least one written complaint to human resources at MBUSI, Mrs. Taylor complains of conduct that falls within the

---

practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117.

180-day time period.  (Doc. 27 at Ex.13.)  Her deposition testimony also describes alleged harassment taking place within the statutory time period. (*See, e.g.*, Dep. of Regina Taylor at 291—93, 389.)  Therefore, the Court cannot say, at this point in the proceedings, that Plaintiff's claim of hostile environment harassment is, as a matter of law, untimely.

> 2.    Based on Sex.

Both parties agree that to establish a hostile environment claim based on sex discrimination, a plaintiff must show: (1) that she belongs to a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment was based on her sex, (4) that the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable.  *Mendoza v. Borden Inc.*, 195 F.3d 1238, 1245 & 1248 n.5 (11th Cir. 1999); *see also Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1502—03 (11th Cir. 1985).  (Docs. 26 at 42—43; 30 at 40; 34 at 40—41.)

Defendant argues first that Plaintiff has not met the third requirement of establishing that any alleged harassment was "based on her sex" because

"[t]here is no evidence that the conduct complained of by [P]laintiff was in any way related to her sex." (Doc. 26 at 44.) "[I]f [P]laintiff's co-workers treated her poorly," MBUSI asserts, "it was because she was combative, hostile, rude[,] and instigated conflicts with them." (Doc. 34 at 42.)

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993)). While "the inference of discrimination [is] easy to draw in most male-female sexual harassment situations[] because the challenged conduct typically involves explicit or implicit proposals of sexual activity," "harassment between men and women[] is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.*

In this case, Mrs. Taylor complained to her employer and testified that, on a number of occasions over a two-year period, Fred Rogers, among other

things, massaged her shoulders, reminded her there was a hotel down the street, and told her that she would leave her husband and follow him around like a puppy dog after five minutes of sex with him.  (Dep. of Regina Taylor at 206, 222, 228, 284—93, 330, 389; Doc. 27 at Ex. 14.)  It is "reasonable to assume" that Mr. Rogers would not have acted in a similar manner with the men at MBUSI.  *See Oncale*, 523 U.S. at 80.

In addition, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex."  *Id*.  The harasser, for instance, could be "motivated by general hostility to the presence of women in the workplace."  *Id*.  Mrs. Taylor testified that men in her group called her names, and people like Fred Rogers and Steve Nord acted in an intimidating fashion on a number of occasions—yelling at her, forcing her to do jobs for which she was not trained, and assigning her to other areas more often than the men in her group.  Mrs. Taylor was the only woman on her team, and questions of fact exist as to whether men in the group were subject to similar treatment.  Plaintiff also testified that Fred Rogers told her "on numerous occasions that [she] was a female that didn't need to be holding down some spot for a man," (Dep. of Regina Taylor at

341) and women were "taking the money out of some man's pocket that should be taking care of his family . . . . all a woman's work was to be at home when a man comes home to **** him and feed him and that's it" (*Id*. at 391).

Plaintiff has presented substantial evidence that alleged harassing conduct in this case was because of her sex or gender.  The credibility of her testimony is a matter for a jury to decide.

> 3.    Prompt Remedial Action.

Defendant also argues that Plaintiff has failed to establish that MBUSI is liable for the alleged conduct of its employees.  Once again, both parties agree on the law underlying Plaintiff's claim: when "the alleged harassment is committed by co-workers, . . . a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action." *Watson v. Blue Circle*, 324 F.3d 1252, 1259 (11th Cir. 2003) (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 n.3 (11th Cir. 2000)).  (Docs. 26 at 46−47; 30 at 45; 34 at 44.)  Defendant does not dispute that it had actual or constructive notice of the alleged harassment at issue

in this case.  Rather, MBUSI contends that it cannot be held liable because it conducted prompt and thorough investigations into *all* of Plaintiff's complaints.  (Doc. 26 at 47.)

While it is true that a complainant does not have a "right to the remedy of her choice," *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1555 (11th Cir. 1997), it is this Court's conclusion, after a review of the evidence provided, that there are questions of fact with regard to whether Defendant responded appropriately, or at all, to a number of Plaintiff's complaints of alleged harassment. Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that MBUSI failed to take immediate and appropriate remedial action in response to Plaintiff's complaints.  Therefore, Defendant has not shown that summary judgment is due to be granted on Plaintiff's hostile environment claim.

C.    Invasion of Privacy.

MBUSI has also moved for summary judgment on Plaintiff's state-law claim for invasion of privacy.  Both parties agree that Mrs. Taylor asserts an invasion of privacy claim based on alleged "intrusion(s) upon the plaintiff's physical solitude or seclusion."  *See Busby v. Truswal Sys. Corp.*, 551 So. 2d

322, 323 (Ala. 1989) (outlining the four distinct wrongs that may comprise the tort of invasion of privacy).  (Docs. 26 at 57; 30 at 55.)  Plaintiff and Defendant also agree that in order to succeed on this claim, the complainant must show: "(1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (citing *Busby*, 551 So. 2d at 323). (Docs. 26 at 57—58; 30 at 55.)

> 1.   Intrusion into an Individual's Private Affairs.

MBUSI argues that it is entitled to summary judgment on Plaintiff's invasion of privacy claim because Mrs. Taylor merely alleges that her team leader, Fred Rogers, made sexual advances—not inquiries into her private affairs.  "To maintain her invasion of privacy claim," Defendant asserts, "the plaintiff must establish intrusion into her private affairs.  For example, there must be inquiries into her sexual activities or interests or coercive sexual demands as opposed to sexual propositions."  (Doc. 34 at 46—47) (citations omitted).  Defendant also distinguishes Mr. Rogers' alleged actions with the

extreme behavior exhibited in *Phillips v. Smalley Maint. Serv.*, 435 So. 2d 705 (Ala. 1983), where a company owner was alleged to have demanded oral sex from the plaintiff, inquired into her sex life with her husband, and locked her in his office.  At worst, says MBUSI, Mr. Rogers' behavior is comparable to employees who have made sexual advances or engaged in mere "horseplay."  (Doc. 26 at 59−60.)

Defendant's assertion that a plaintiff must show inquiries into her own sexual activities or coercive sexual demands to survive summary judgment on an invasion of privacy claim is simply not supported by Alabama case law. While it is true that "asking a co-employee for a date and making sexual propositions *usually* do not constitute an invasion of privacy," *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d at 1194 (emphasis added), the Alabama Supreme Court has found that a jury could reasonably conclude that an "offensive or objectionable prying or intrusion into the plaintiffs' private affairs or concerns" occurred where an employee simply made numerous lewd remarks and gestures to women co-workers, *Busby*, 551 So. 2d at 324. The Alabama Civil Court of Appeals also specifically rejected the idea that alleged behavior must be as severe as what occurred in *Phillips*:

> [Defendant] contends that his conduct[5] was not as severe as that involved in *Phillips* because, he argues, he did not make "coercive sexual demands' upon [the plaintiff that were] such an 'examination' into her 'private concerns,' that is, improper inquiries into other personal sexual proclivities and personality.' Thus, he argues, he did not commit the tort of invasion of privacy. We reject this argument. We decline to decide the extent or frequency of humiliation and offensive behavior that a person must endure before he or she may recover for invasion of privacy. We do determine that, like the defendant's behavior in *Phillips*, [Defendant's] behavior was "offensive . . . and of such a personal nature that . . . it would be wrongful, and thus actionable, no matter where it occurred."

*Cunningham v. Dabbs*, 703 So. 2d 979, 982 (Ala. Civ. App. 1997), *cert. denied*, 703 So. 2d 986 (Ala. 1997).

Based on a review of the evidence, this Court concludes that genuine issues of material fact exist as to whether Mr. Rogers' alleged behavior towards Mrs. Taylor constitutes an unreasonable intrusion into her private affairs.

--------

[5]The plaintiff in *Cunningham* alleged that the defendant "frequently rubbed her shoulders and repeatedly made lewd and suggestive comments to her, including suggestions that they have sex, that they should 'slip off and go skinny-dipping,' that he '[knew] of a better way of getting hot and sweaty that we could enjoy,' that he would take her hunting and 'we'll find more to do than just wait on a deer to come by,' and that he told her 'just because you sleep with someone does not mean you have to marry them.'" *Cunningham v. Dabbs*, 703 So. 2d 979, 980 (Ala. Civ. App. 1997).

2. Ratification of an Employee's Behavior.

MBUSI maintains, however, that it cannot be held responsible for Mr. Rogers' alleged behavior, even if his actions constitute an invasion of Mrs. Taylor's privacy, because the company did not ratify his actions. (Doc. 26 at 61.) An employer can be held liable for the intentional torts of an employee "if the employer ratifies the employee's conduct." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d at 1195. An employer ratifies conduct if the employer: (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation." *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992).

Defendant argues that MBUSI could not have known that the complained-of behavior constituted a tort because the "only tort alleged by [P]laintiff is invasion of privacy, and, as discussed, there was no invasion of privacy because there was no intrusion into [P]laintiff's private life." (Doc.

26 at 61–62.)  This Court, however, has concluded that issues of fact exist as to whether there was, in fact, an intrusion into Mrs. Taylor's private affairs.  Therefore, Defendant's argument fails.  A reasonable jury could conclude that MBUSI knew or should have known that the alleged sexual harassing conduct, if proven, could constitute a common-law tort.  *See Machen v. Childersburg Bankcorporation, Inc.*, 761 So. 2d 981, 985 (Ala. 1999).

MBUSI also asserts that it "took adequate steps to remedy the situation as soon as it received each of [P]laintiff's complaints." (Doc. 26 at 62.)  As discussed earlier in this opinion, it is this Court's conclusion, after a review of the evidence, that questions of fact exist as to whether MBUSI responded adequately, or at all, to Plaintiff's complaints of harassment.  Because a reasonable jury could conclude that MBUSI did not take reasonable and necessary steps to stop tortious conduct, Defendant's motion for summary judgment on Plaintiff's claim for invasion of privacy is due to be denied.

D.     Negligent and Wanton/Reckless Training or Supervision.

Defendant has moved for summary judgment on Plaintiff's state-law claims for negligent and wanton/reckless training or supervision of its

employees.  The Alabama Supreme Court recognized a cause of action for negligent and wanton supervision or training in *Big B., Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993).  *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999).  The cause of action is generally "predicated on the underlying tortious conduct of an employee."  *Id*.  A plaintiff must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence," in order to recover for a claim of negligent training or supervision.  *Ledbetter v. United Am. Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993).  "To recover for a claim of wanton training or supervision, a plaintiff must show that the employer acted with some degree of consciousness that injury was likely to result from its action or failure to act."  *Big B.*, 634 So. 2d at 1004.

First, Defendant argues that Plaintiff cannot establish an underlying tort.  (Doc. 26 at 63.)  As explained previously, however, genuine issues of material fact exist as to whether tortious conduct took place.

Defendant also maintains that Plaintiff cannot show that alleged incompetence of an employee was actually known or was discoverable by

MBUSI, or that MBUSI acted or failed to act with an awareness that its conduct would likely result in injury.  (Doc. 64.)  Defendant cites numerous anti-harassment policies and classes that employees attended, and affirms that "it is absurd to suggest that MBUSI acted negligently or wantonly in training or supervising its employees."  (Doc. 26 at 64–65; 34 at 48.)

While there is no doubt that MBUSI had anti-harassment policies in place and held classes for its employees, the issue this Court must address is whether Defendant knew or should have known about alleged tortious conduct and failed to act in a negligent or wanton/reckless manner.  Viewing the evidence in the light most favorable to Mrs. Taylor, questions of fact exist as to whether MBUSI had knowledge of alleged harassing behavior prior to its documented investigation and failed to act.  Questions of fact also exist as to whether the alleged conduct continued after the documented investigation and follow-up, Defendant knew the conduct continued, and MBUSI still failed to act.  Therefore, Defendant's motion for summary judgment on Plaintiff's claim for negligent and wanton/reckless training and supervision will be denied.

E.    Loss of Consortium.

Finally, Defendant has moved for summary judgment on plaintiff William Taylor's claim for loss of consortium because Mrs. Taylor has not alleged any physical injury, which MBUSI contends is a "required element for a loss of consortium claim." (Doc. 26 at 66.)

Indeed, in order to recover for loss of consortium under Alabama law, a plaintiff's spouse must suffer physical injury as a result of the tortious act of a third party. *A.L. Williams & Assocs. v. Williams*, 517 So. 2d 596, 598 (Ala. 1987); *Slovensky v. Birmingham News Co.*, 358 So. 2d 474, 477 (Ala. Civ. App. 1978). Despite Plaintiff's assertion that Mrs. Taylor "testified at great length as to both the physical, as well as emotional[,] injuries she suffered," (Doc. 30 at 65) a review of Plaintiff's citations reveals only references to emotional distress. Plaintiff has not proffered substantial evidence (or any evidence) of physical injuries resulting from the tortious conduct alleged in this case. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for loss of consortium.

V.   Conclusion.

For the reasons stated above, Defendant's motion for summary judgment is due to be granted with respect to Plaintiff's claim for loss of

consortium, but denied in all other respects.  A separate order in conformity with this opinion will be entered.

Done this 2nd day of May 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153